UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANTHONY S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-03143-DLP-JPH |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

### ORDER

Plaintiff Anthony S. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

### I. PROCEDURAL HISTORY

On July 6, 2017, Anthony filed his application for Title II DIB and Title XVI SSI benefits. (Dkt. 12-2 at 21, R. 20). Anthony alleged disability based on a broken neck, broken back, and injured brachial plexus. (Dkt. 12-3 at 4, R. 66). The Social

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

Security Administration ("SSA") denied Anthony's claims initially on November 7, 2017, (Dkt. 12-3 at 2-21, R. 64-83; Dkt. 12-4 at 2-9, R. 112-19), and on reconsideration on March 7, 2018, (Dkt. 12-3 at 22-49, R. 84-111; Dkt. 12-4 at 14-27, R. 124-37). On April 27, 2018, Anthony filed a written request for a hearing, which was granted. (Dkt. 12-4 at 28-38, R. 138-48).

On December 12, 2019, Administrative Law Judge ("ALJ") Roy LaRoche, Jr. conducted a video hearing, where Anthony and vocational expert Harry Cynowa appeared. (Dkt. 12-2 at 42-60, R. 41-59). On April 2, 2020, ALJ LaRoche issued an unfavorable decision finding that Anthony was not disabled. (Dkt. 12-2 at 21-36, R. 20-35). Anthony appealed the ALJ's decision and, on October 15, 2020, the Appeals Council denied Anthony's request for review, making the ALJ's decision final. (Dkt. 12-2 at 7, R. 6). Anthony now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. § 1383(c)(3).

## II.  STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB and SSI only after he establishes that he is disabled. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work

experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a).[2] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then he must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (a negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled).

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act. The parallel sections – applying to disability insurance benefits and supplemental security income benefits – are verbatim and make no substantive legal distinction based on the benefit type.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant – in light of his age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Anthony is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The

ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Anthony was twenty-six years old as of his alleged onset date of June 3, 2017. (Dkt. 12-3 at 4, R. 66). He is a high school graduate and is certified in welding, aerial platform, crane operation, and forklift operation. (Dkt. 12-6 at 7, R. 223; Dkt. 12-2 at 48, 51, R. 47, 50). Anthony has relevant past work history as a steel erector and farm hand. (Dkt. 12-6 at 7, R. 223; Dkt. 12-2 at 49-50, R. 48-49).

#### B. ALJ Decision

In determining whether Anthony qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Anthony was not disabled. (Dkt. 12-2 at 21-36, R. 20-35). At Step One, the ALJ found that Anthony had not engaged in substantial gainful activity since his alleged onset date of June 3, 2017. (Id. at 24, R. 23).

At Step Two, the ALJ found that Anthony has severe medically determinable impairments of degenerative disc disease of the cervical spine, dysfunction of the right upper extremity, and attention deficit hyperactivity disorder (ADHD) and a nonsevere impairment of diverticulitis. (Dkt. 12-2 at 24, R. 23).

At Step Three, the ALJ found that Anthony's impairments did not meet or medically equal the severity of one of the impairments in the Listings. (Dkt. 12-2 at 24-28, R. 23-27). In reaching this determination, the ALJ considered Listings 1.02, 1.04, and 12.11. (Id.).

As to the "paragraph B" criteria, the ALJ found that Anthony had no limitation in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself; but moderate limitations in concentrating, persisting, or maintaining pace. (Dkt. 12-2 at 24-28, R. 23-27).

After Step Three but before Step Four, the ALJ found that Anthony had the residual functional capacity ("RFC") to perform sedentary work with the following limitations: lifting up to 20 pounds occasionally and up to 10 pounds frequently with the left upper extremity; no use of the right upper extremity for reaching, lifting, or carrying; no climbing of ladders, ropes, or scaffolds; no crawling; no working around unprotected heights or operating heavy machinery; must be able to alternate between siting and standing at the work station not more frequently than every 25 minutes; and is limited to unskilled work. (Dkt. 12-2 at 28-34, R. 27-33).

At Step Four, the ALJ concluded that Anthony is unable to perform any past relevant work. (Dkt. 12-2 at 34-35, R. 33-34). At Step Five, relying on the vocational expert's testimony, the ALJ determined that, considering Anthony's age, education, work experience, and residual functional capacity, he was capable of performing a surveillance monitoring job. (Dkt. 12-2 at 35-36, R. 34-35). The ALJ thus concluded that Anthony was not disabled. (Id. at 36, R. 35).

### IV. ANALYSIS

Anthony asserts that the ALJ's decision should be remanded because (1) the ALJ erred in evaluating Plaintiff's subjective symptoms, and (2) the ALJ failed to properly address his concentration, persistence, and pace limitations in the residual functional capacity and hypothetical to the vocational expert. (Dkt. 14). The Court will address each argument in turn.

#### A. Evaluation of Plaintiff's Symptoms

First, Anthony argues that the ALJ's SSR 16-3p analysis of his subjective symptoms was erroneous because it only summarized the hearing testimony and the medial evidence, and failed to consider any other information as required by the relevant factors. (Dkt. 14 at 21-24). The Commissioner contends that the ALJ thoroughly and accurately discussed the relevant factors and that the credibility determination must be upheld unless found to be patently wrong. (Dkt. 16 at 10).

While the Plaintiff asserts that the ALJ failed to mention any SSR 16-3p factors, and that the analysis fails to comply with the regulations, the Plaintiff fails to identify any factors that were allegedly not considered or demonstrate that a more comprehensive discussion of the factors would have supported a different outcome. The Seventh Circuit has held in a Social Security Disability context that "[p]erfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). The Court declines to supply that discussion for the Plaintiff. Because

this credibility argument is perfunctory and undeveloped, the Court deems it waived.

### B. Concentration, Persistence, and Pace

Anthony next argues that the ALJ's RFC assessment and the hypothetical question posed to the vocational expert fails to account for his moderate limitations in concentrating, persisting, and maintaining pace. (Dkt. 14 at 22). Specifically, Anthony argues that the ALJ's RFC analysis fails to rectify the disparity between the job requirements of a surveillance monitoring job with his moderate limitations in concentrating, focusing and maintaining attention. (Dkt. 14 at 2). Plaintiff contends the ALJ's perfunctory and conclusory RFC analysis fails to allow the Court to trace the path of the ALJ's reasoning or engage in meaningful judicial review. (Id. at 21). Lastly, Anthony asserts that the ALJ's decision to limit the Plaintiff to unskilled work within the RFC fails to adequately address Anthony's tendency to lose attention and need redirection. (Id. at 24).

In response, the Commissioner maintains that the ALJ adequately accounted for Plaintiff's limitations in concentration, persistence, and pace in the RFC and hypothetical to the vocational expert. (Dkt. 16 at 5-9). The Commissioner directs the Court to the new regulations for mental impairments that govern this case, which define "moderate" limitations as meaning that a claimant's functioning in this area on a sustained basis is "fair." (Id. at 6). The Commissioner further argues that since April 2019, the Seventh Circuit has affirmed almost every decision where the claimant had moderate limitations in concentration, persistence, and pace, and the

ALJ assessed limitations consistent with unskilled work. (Id. at 6-7). The ALJ also contends that Plaintiff did not explain what additional limitations were established by the evidence and that the Plaintiff "fails to appreciate that moderate limitations, on their own, do not mean a claimant is disabled." (Id. at 8-9). In reply, Anthony asserts that the Commissioner has merely offered post-hoc justifications, which are prohibited. (Dkt. 17).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [his] impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). "A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5.

When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all

limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 404.1545(a). Both an RFC assessment and the hypothetical posed to the vocational expert must account for documented limitations of concentration, persistence, or pace. *Paul v. Berryhill*, 760 F. App'x 460, 465 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813. The determination of whether an RFC adequately captures a claimant's mental limitations is made on a case-by-case basis and is reviewed to ensure that it excludes those tasks that someone with the claimant's limitations could not perform.

At Step Three, the ALJ found that Anthony had moderate limitations in concentration, persistence, and pace. (Dkt. 12-2 at 27, R. 26). In making this determination, the ALJ considered Anthony's long history of attention deficit hyperactivity disorder ("ADHD"), inattentive type. (Dkt. 12-2 at 27, R. 26). The ALJ acknowledged Anthony's treatment with prescription Adderall and his therapy for ADHD, ADD, and anxiety. (Dkt. 12-2 at 27, R. 26; Dkt. 12-12 at 128-92, R. 1730-94; Dkt. 12-14 at 2-186, R. 1983-2167). The ALJ acknowledged Anthony's statements in his function report that he can pay attention until his pain overrides it, that he does not finish what he starts, and that he is good at watching TV when he is not dozing

off. (Dkt. 12-2 at 27, R. 26; Dkt. 12-6 at 27-28, R. 243-44). The ALJ recognized Anthony's complaints during his therapy sessions, specifically his belief that his attention had gotten worse since his motor vehicle accident. On physical examination, the ALJ noted that Anthony was found to have restless motor activity, ruminating thought content, and distractible thought process. (Dkt. 12-2 at 27, R. 26; Dkt. 12-13 at 90-94, R. 1978-82). The ALJ also discounted the opinion of state agency psychological consultant, Dr. Joelle Larsen, who opined that Anthony had no significant concentration, persistence, or pace limitation, finding it inconsistent with Anthony's ADHD diagnosis, treatment history, and the rest of the record. (Dkt. 12-2 at 27, R. 26; Dkt. 12-3 at 43-44, R. 105-06).

In assessing Plaintiff's RFC, the ALJ noted Anthony's hearing testimony and his August and September 2017 appointments with Dr. Gregory Spangler in which Anthony was prescribed Adderall for his attention deficit hyperactivity disorder. (Dkt. 12-2 at 30, R. 29; Dkt. 12-12 at 131-34, 141-44, R. 1733-36, 1743-46). The ALJ also acknowledged Anthony's August 2018 appointment with Dr. Spangler in which Anthony complained of difficulty concentrating later in the day while helping at his grandfather's farm. (Dkt. 12-2 at 32, R. 31; Dkt. 12-14 at 100-01, R. 2081-82). During this August 2018 visit, Dr. Spangler refilled Anthony's prescription of Adderall XR 30mg and increased Plaintiff's 10mg prescription of Adderall to three times per day. (Dkt. 12-14 at 100-01, R. 2081-82). The ALJ next noted Anthony's July 2019 appointment with Dr. Spangler in which Anthony asked to go on a 20mg extended-release prescription of Adderall because his days at work were getting

longer and the medication was wearing off. (Dkt. 12-2 at 33, R. 32; Dkt. 12-14 at 45-53, R. 2026-34); *see also*, (Dkt. 12-14 at 45-53, R. 2026-34). The ALJ also recognized that at Anthony's September 2019 appointment, Dr. Spangler noted that Anthony's ADHD medication regimen seemed to be working very well and that Anthony was not experiencing any adverse effects or that the prescriptions were wearing off too early in the evenings. (Dkt. 12-2 at 34, R. 33; Dkt. 12-14 at 31-32, R. 2012-13).

The ALJ found Anthony's "mental impairment interfere[d] only moderately with his work related functioning" and limited Anthony to "unskilled work"[3] in his RFC determination. (Dkt. 12-2 at 28, 34, R. 27, 33). The ALJ remarked, without further analysis or explanation, that "[c]laimant's moderate mental restrictions in concentrating, persisting, or maintaining pace have been taken into account" in the opinion. (Dkt. 12-2 at 34, R. 33).

The Seventh Circuit Court of Appeals has frequently considered whether a restriction to unskilled work adequately addresses a claimant's limitations in concentrating, persisting and maintaining pace. While not all issues of concentration or pace can be resolved by making tasks simpler, *see, e.g.*, *Varga v. Colvin*, 7994 F.3d 809, 814 (7th Cir. 2015); *see also*, SSR 85-15, 1985 WL 56857, at

---

[3] The Regulations define "unskilled work" as work that needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually in 30 days. 20 C.F.R. § 404.1568.

13

\*6, the Seventh Circuit has held in certain circumstances that a limitation to unskilled work can account for concentration difficulties if the record indicates that it addresses the underlying symptoms. *See, e.g.*, *Pytlewski v. Saul*, 791 F. App'x 611, 616 (7th Cir. 2019); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019). Here, the question is whether the ALJ adequately explained, with support from the medical record, how a restriction to "unskilled work" addressed Anthony's specific mental limitations with concentrating, persisting or maintaining pace.

After summarizing the hearing testimony and the medical evidence, the ALJ provided a cursory explanation for his determination that restricting Anthony to "unskilled work" in the RFC would address Plaintiff's mental impairments. As Anthony highlights, the ability to learn a complex task is not the same as the ability to maintain attention and focus or perform activities within a schedule, which were the primary effects of Anthony's limitations. (Dkt. 23-24); *see also, Robert E.S. v. Comm'r of Soc. Sec.*, No. 4:20-cv-04131-JEH, 2022 WL 965884, at \*6 (C.D. Ill. Mar. 30, 2022); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."). In addition, while the ALJ noted that Anthony's prescribed medications facilitated improvements in his symptoms, the ALJ did not explain how those improved symptoms enabled Anthony to consistently maintain his concentration and attention under normal job conditions.

Upon review of the record, and of the ALJ's explanation of his findings, it is not clear how the ALJ arrived at his conclusion that a restriction to unskilled work would adequately address Anthony's concentration, persistence, and pace issues. Nor are there any findings supported by the state agency psychological consultants or the treating medical providers that directly address Anthony's functional mental limitations and support the ALJ's findings. This lack of evidentiary support distinguishes this case from several of the cases the Commissioner cites, (Dkt. 16 at 6-7), which involved the interpretation of medical opinion that concluded that limitations to simple tasks addressed the concentration, persistence, and pace issues. *See, e.g.*, *Burmester v. Berryhill*, 920 F.3d 507, 512-13 (7th Cir. 2019) (ALJ reasonably relied on medical expert who translated concentration limitations into RFC determination that claimant could "understand, remember and carry out simple instructions"); *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019) (limitations to "routine tasks and limited interactions with others" adequately accounted for claimant's concentration and memory limitations related to "demonstrated psychological symptoms"); *Saunders v. Saul*, 777 F. App'x 821, 825 (7th Cir. 2019) (RFC appropriately excluded "those tasks that someone with the claimant's limitations would be unable to perform" by including medical expert's proposed concentration-related limitations of "unskilled work involving simple, routine, and repetitive tasks; no fast-paced production line or tandem tasks; only occasional changes in work setting; and GED levels of one or two"); *Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021) (hypothetical properly included the restrictions

15

that agency reviewers "stated would accommodate Pavlicek's limitations" in concentration, persistence, and pace). Unlike the cases cited by the Commissioner, the ALJ here cited to no treating providers or agency support for his RFC mental functional limitations. It remains unclear to the Court, however, how the ALJ accounted for the moderate limitations in concentration, persistence, and pace that he found at Step Three in the RFC conclusion.

For these reasons, the Court finds the ALJ's RFC analysis fails to adequately address Plaintiff's difficulties with concentration, persistence and pace so as to provide a logical bridge for the restriction he placed in this area within his hypothetical to the vocational expert, which included a limitation of "simple or routine tasks." (Dkt. 12-2 at 58-59, R. 57-58). Because the ALJ failed to explain how or why restricting Anthony to unskilled work adequately accounted for Plaintiff's recognized mental impairments, the Court is unable to find the "requisite logical bridge" between the evidence and his conclusion. *Julie J. v.* Kijakazi, No. 1:20-cv-01597-SEB-DLP, 2021 WL 4437587, at *2 (S.D. Ind. Sept. 28, 2021). Accordingly, remand is warranted for further consideration of Plaintiff's concentration, persistence, and pace limitations.

## V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration. Final judgment will issue accordingly.

So ORDERED.

Date: 4/18/2022

*Doris L. Pryor*
Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email